## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIN M. GARDNER, and** | : | **CIVIL ACTION NO. 1:10-CV-0527** |
| **JEFFREY M. GARNER** | : | |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SALLY A. BARRY,** | : | |
| **RICHARD WORLEY, JOHN LEAHY,** | : | |
| **and LEBANON COUNTY** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a civil rights action filed by plaintiffs Erin M. Gardner ("Erin"), and

Jeffrey M. Gardner ("Jeffrey"), against Sally A. Barry ("Barry"), Richard Worley

("Worley"), John Leahy ("Leahy"), and Lebanon County, alleging violations of

Erin's and Jeffrey's First, Fourth, and Fourteenth Amendment rights. Presently

before the court is a motion (Doc. 6) to dismiss the complaint filed pursuant to

Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court will

grant the motion in part and deny the motion in part.

## I.    **Background**

### A.    **Statement of Facts**[1]

This case arises out of events that occurred during 2007 and 2008.  In August 2007, plaintiff Erin Gardner, then Erin Lewis, was employed as a Lebanon County probation officer. (Doc. 1 ¶ 6).  Erin met plaintiff Jeffrey Gardner when she was assigned to supervise Jeffrey during the term of his probation.  (Id. ¶ 7).  Erin supervised Jeffrey from August 2007 until February 15, 2008. (Id.)  In December of 2007, plaintiffs began an intimate relationship.  (Id. ¶ 19).  On February 15, 2008, Erin resigned from her position as a Lebanon County probation officer and took a position with the United States Army stationed at Fort Meade, Maryland.  (Id. ¶ 8).  Erin's new employment required top secret security clearance, which she was granted.  (Id.)

Sometime between February 15, 2008, and March 7, 2008, Jeffrey requested from his new probation officer permission to visit Erin in Maryland.  (Id. ¶ 9).  After this request, Ms. Barry, head of Adult Probation for Lebanon County, telephoned Jeffrey to inquire whether he and Erin had a relationship.  (Id.)  On March 7, 2008, Erin traveled to Pennsylvania to visit Jeffrey.  (Id. ¶ 10).  That evening, at approximately 8:30 p.m., Ms. Barry and Mr. Worley, Barry's assistant, sought and

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint.  See infra Part II.  However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded.  Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

received access to Jeffrey's apartment. (Id. ¶ 11). Barry and Worley informed Jeffrey that Erin had to leave or Jeffrey was going to jail. (Id. ¶ 12). They ordered that Jeffrey not see, talk to, or associate with Erin because they were conducting an internal investigation. (Id.) Upon hearing this, Erin voluntarily agreed to leave, but informed Barry that it was unlawful to impose special conditions of probation or parole on any probationer or parolee without a hearing and a court order. (Id. ¶ 13). Barry purportedly responded, "I can do whatever I want." (Id. ¶ 14).

That very evening, Lebanon County Chief of Detectives, John Leahy, telephoned Jeffrey and directed him to appear in his office for questioning on Monday, March 10, 2008. (Id. ¶ 15). Jeffrey complied with this directive. The primary focus of the questioning was whether Jeffrey and Erin had an intimate relationship. (Id. ¶ 16). Barry was present at the time of this interview. (Id. ¶ 17). Jeffrey informed Leahy and Barry that he and Erin had fallen in love and had an intimate relationship beginning December 2007. (Id. ¶ 19). Plaintiffs aver that no statute, regulation, custom, or practice within the Lebanon County Adult Probation Department prohibits or advises staff or clients against dating or sexual relations with any other person. (Id. ¶ 18).

On or about March 28, 2008, Leahy charged Erin with two misdemeanors: tampering with public records and obstructing the administration of law.[2] (Id. ¶ 26).

---

[2] After an internal investigation, a criminal complaint was filed against Erin relating to her supervision of Jeffrey. The complaint contained three charges: (1) tampering with public records or information in violation of 18 Pa. Cons. Stat. § 4911(a)(1), a second-degree misdemeanor; (2) obstructing the administration of law

In April 2008, after Barry learned that Erin was going to contest the criminal charges, plaintiffs aver that Barry contacted Erin's supervisor at Fort Meade, and fabricated information about Erin's charges. (Id. ¶¶ 50-52). According to the complaint, Erin was discharged from her position and stripped of her security clearance as a result of this contact. (Id. ¶ 53). A jury found Erin guilty of tampering with public records, but not guilty on charge of obstructing the administration of law.[3] (Id. ¶ 47).

In early June 2008, Jeffrey and Erin conferred with an attorney regarding these incidents. (Id. ¶ 20). As a result of the meeting Jeffrey's attorney mailed a letter to Barry declaring her conduct "illegal." (Id. ¶ 21). Jeffrey and Erin were married on June 17, 2008. (Id. ¶¶ 22, 23). That same day, Worley called Jeffrey and ordered him to report to the Lebanon Adult Probation Department. (Id. ¶ 22). When he arrived, Worley handed him an order to attend a probation violation hearing on June 25, 2008. (Id. ¶ 24). Jeffrey informed Worley that he and Erin had

---

or other government function in violation of 18 PA. CONST. STAT. § 5101, a second-degree misdemeanor; and (3) tampering with public records or information in violation of 18 PA. CONST. STAT. § 4911(a)(1), a third-degree felony. The felony charge was withdrawn before trial. The court may rely on public records at the motion to dismiss stage, see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994), however, neither party has submitted the public record of these charges or the conviction. At this juncture, the court will rely on the recitation of the charges as stated in defendants' brief in support of the motion to dismiss (see Doc. 7 at 6) as plaintiffs do not dispute the accuracy thereof. (See Doc. 10 at 22).

[3] Plaintiffs state in their brief in opposition to the motion to dismiss that the conviction is under appellate review. (Doc. 10 at 22-23).

married, to which Worley allegedly responded "they'll find something to violate [you] on." (Id. ¶ 25).

## B. **Procedural History**

Plaintiffs Jeffrey and Erin filed suit pursuant to 28 U.S.C. § 1983, against Barry, Worley, Leahy, and Lebanon County on March 8, 2010, alleging violations of plaintiffs' First, Fourth and Fourteenth Amendment Rights.[4]  In Count I, plaintiffs allege that defendants violated plaintiffs' First Amendment right to associate with each other and engage in a personal relationship. (Doc. 1 ¶¶ 29-35).  Notably, plaintiffs allege that Lebanon County has a policy of imposing special probation conditions against probationers without court orders and hearings. (Id. ¶ 33).  In Count II, plaintiffs allege that defendants violated their Fourteenth Amendment substantive due process right to enter intimate relations. (Id. ¶¶ 36-44).  In Count III, Erin alleges that defendants Barry and Leahy violated her Fourth Amendment rights by proceeding with a malicious prosecution that lacked probable cause. (Id. ¶¶ 45-48).  Finally, in Count IV, Erin alleges that defendant Barry violated Erin's First Amendment right to petition for a redress of grievances by contacting Erin's supervisor at Fort Meade. (Id. ¶¶ 49-54).  Plaintiffs seek damages for pain and

---

[4]  It is not clear whether plaintiffs are suing Barry, Worley, and Leahy in their individual or official capacities.  Punitive damages are unavailable against a municipality in § 1983 actions, and are also unavailable against officials acting in their official capacities, see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981),  however, punitive damages may be available against Barry, Worley, and Leahy in their individual capacities.  See Smith v. Wade, 461 U.S. 30, 56 (1983).  The court will assume that plaintiffs are pursing all available claims and remedies.

suffering, emotional distress, humiliation and embarrassment, punitive damages, attorney's fees, and costs.

On April 1, 2010, defendants filed the instant motion (Doc. 6) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and is now ripe for disposition.

## II.    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."

<u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry.  In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (citing <u>Twombly</u>, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, --- U.S. at ---, 129 S. Ct. at 1949.  When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  <u>See</u> Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III.    Discussion

#### A.    First and Fourteenth Amendment Claims Pursuant to 42 U.S.C. § 1983: Right to Associate and Intimate Relations

Section 1983 offers private citizens a means to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id. As this court has noted on many prior occasions, § 1983 is not a source of substantive rights but instead provides a method for vindicating rights secured elsewhere in federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). A § 1983 plaintiff must demonstrate that the defendant, while acting under the color of state law, deprived the plaintiff of a federal constitutional or statutory right. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

#### 1.    Standing

Defendants challenge plaintiffs standing to assert Counts I and II of the complaint. Standing requires a true a case or controversy. U.S. Const. art. III, § 2. Specifically, plaintiffs must establish: (1) an injury in fact that is concrete and

particularized and actual or imminent, not conjectural or hypothetical, (2) a causal connection between the injury and the defendants' wrongful conduct, and (3) meaningful redress through a favorable decision. <u>Berg v. Obama</u>, 586 F.3d 234, 239 (3d Cir. 2009) (citing <u>Taliaferro v. Darby Tp. Zoning Bd.</u>, 458 F.3d 181, 188 (3d Cir. 2006)); <u>see</u> <u>also</u> <u>United States v. Hayes</u>, 515 U.S. 737, 742-43 (1995); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Defendants argue plaintiffs sustained no actual or imminent injury on March 7, 2008. Erin voluntarily removed herself from the apartment after Barry and Worley threatened Jeffrey with imprisonment. Erin expressed her knowledge that Barry and Worley lacked authority to impose a probation condition. Defendants possessed no method of exerting control over Erin as she was neither employed by, nor on probation in Lebanon County. Defendants assert that plaintiffs' relationship was not disturbed in any manner and, therefore, no constitutional violations occurred.

Taking the complaint in the light most favorable to the plaintiffs, the court finds that the requirements of standing have been satisfied. Accepting the allegations as true, as the court must in this procedural posture, plaintiffs were ordered to disassociate by Barry, the head of adult probation. Barry declared that she had carte blanche with respect to restrictions on Jeffrey's probation. Criminal charges were filed against Erin after which Barry telephoned Erin's supervisors at Fort Meade. Jeffrey was summoned for an alleged probation violation and Worley warned that the probation department would conjure up some form of charges

against Erin and Jeffrey. Leahy subjected Jeffrey to questioning about Jeffrey's relationship with Erin, including questions focused on the intimate details of their relationship, all in the presence of Barry. That Erin and Jeffrey continued to see each other does not equate to the absence of constitutional injury.

## 2. <u>Freedom to Associate Under the First Amendment</u>

In Count I, Plaintiffs allege that the Constitution secures for them a First Amendment right to associate with each other, fall in love and have intimate relations with each other. Defendants allege no such right exists in the First Amendment, therefore the count should be dismissed without leave to amend.

The First Amendment nowhere explicitly protects the freedom to associate, but the Supreme Court has established the right to associate to be a fundamental right protected by the Constitution. <u>NAACP v. Alabama</u>, 357 U.S. 449, 460-61 (1958). The Supreme Court has recognized the right in "two distinct senses." <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 617 (1984).

> In one line of decisions, the court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

Id. at 617-18. Courts have utilized the above passage to conclude that the First

Amendment protects both expressive association and intimate association.[5]  See

<hr />

[5]  The Supreme Court's decisions in Roberts and its progeny do not clearly indicate whether the right to intimate association is rooted in the First Amendment, the Fourteenth Amendment, or both.  The Court's discussion of the right to intimate association in Roberts is supported mainly by citations to cases rooted in the Fourteenth Amendment.  See Roberts, 468 U.S. at 619-20 (citing cases such as: Zablocki v. Redhail, 434 U.S. 374 (1978); Moore v. East Cleveland, 431 U.S. 494 (1977); Wisconsin v. Yoder, 406 U.S. 205 (1972); Griswold v. Connecticut, 381 U.S. 479 (1965); Pierce v. Soceity of Sisters, 268 U.S. 510 (1925); Stanley v. Illinois, 405 U.S. 645 (1972); Stanley v. Georgia, 394 U.S. 557 (1969); Loving v. Virginia, 388 U.S. 1 (1967)).  Admittedly, the description of the right to intimate association as a "fundamental element of personal liberty" sounds in Fourteenth Amendment substantive due process terms.  Nonetheless, Supreme Court cases following Roberts suggest that the right to intimate association has roots in the First Amendment as well.  See Bd. of Dir. of Rotary Internat'l v. Rotary Club of Durante, 481 U.S. 537, 545 (1987) (discussing protected intimate relationships and stating that "we have not held that constitutional protection is restricted to relationships among family members.  We have emphasized that the First Amendment protects those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.") (internal quotations and citations omitted); City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) (holding that "the activity of these dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment.  Thus this activity qualifies neither as a form of 'intimate association' nor as a form of 'expressive association' as those terms were described in Roberts."); Boy Scouts of America v. Dale, 530 U.S. 640, 698 n.26 (2000) (scope of right to intimate association "unclear" but Boy Scouts of America does not qualify as an intimate association).

Defendants argue that the First Amendment does not protect the freedom of intimate association, (Doc. 7 at 20), and cite to Schlarp v. Dern, 610 F. Supp. 2d 450, 461-62 & n.7 (W.D. Pa. 2009), for the propositions that only expressive association is rooted in the First Amendment, and that intimate association is a freedom protected by the Fourteenth Amendment.  The court in Schlarp stated that the right to intimate association is properly characterized as a substantive due process right and that other courts frequently mischaracterize the right as a First Amendment right, "[p]erhaps . . . due, in some instances, to the right of intimate association . . . overlapping with a distinct right grounded in the First Amendment." Id. at 462 n.7 (citations omitted); see also Montgomery v. Stefaniak, 410 F.3d 933,

Behm v. Luzerne County Children & Youth Policy Makers, 172 F. Supp. 2d 575, 585 (M.D. Pa. 2001); Schultz v. Wilson, Civ. A. No. 1:04-CV-1823, 2007 WL 4276696 at *7 (M.D. Pa. Dec. 4, 2007); Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 438 (3d Cir. 2000) (citing Roberts, 468 U.S. at 617-18).

The freedom to intimate associations is the right to maintain such private relationships free of state intrusion. See Pi Lambada, 229 F.3d at 441. Protected intimate associations include familial relationships involving deep attachments and commitments and the sharing of personal aspects of one's life. See Roberts, 468

---

937 (7th Cir. 2005) (intimate association protected by Fourteenth Amendment personal liberty, not First Amendment); Sanitation and Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 996 (2d Cir. 1997) (same); Nero v. Hosp. Auth. of Wilkes Cnty., 86 F. Supp. 2d 1214, 1229 (S.D. Ga. 1998) (same).

There appears to be a circuit split on the issue, however, the majority of circuits, including the Third Circuit, finds a right to intimate association protected under the First Amendment, as well as an intimate association or privacy right protected under the Fourteenth Amendment substantive due process clause. See Starling v. Bd. of Cnty. Com'rs, 502 F.3d 1257, 1261 & n.3 (11th Cir. 2010); Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 146 (4th Cir. 2009) (noting First Amendment protects both intimate and expressive association); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1081-82 (8th Cir. 2008); Dible v. City of Chandler, 515 F.3d 918, 929-30 (9th Cir. 2008) (discussing right to privacy and intimate association under First Amendment); Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of N.Y., 502 F.3d 136 (2d Cir. 2007); Beecham v. Henderson County, Tennessee, 422 F.3d 372 (6th Cir. 2005); see generally Nancy Catherine Marcus, The Freedom of Intimate Association in the Twenty First Century, 16 Geo. Mason U. Civ. Rts. L.J. 269, 287 & n.95 (2006) (noting the split).

Cases in this district make clear that the First Amendment does indeed protect the freedom of intimate association. See e.g., Mills v. City of Harrisburg, 589 F. Supp. 2d 544, 554 n.9 (M.D. Pa. 2008) (rejecting First Amendment right of intimate association claim by plaintiff charged with patronizing a prostitute); Schultz v. Wilson, Civ. A. No. 1:04-CV-1823, 2007 WL 4276696 at *9 (M.D. Pa. Dec. 4, 2007) (First Amendment association claim fails under either expressive or intimate association theory).

U.S. at 619-20 (relationships protected by right to intimate association are "those that attend the creation and sustenance of a family-marriage, . . . the raising and education of children, . . . and cohabitation with one's relatives"); <u>see</u> <u>also</u> <u>Pi Lambda</u>, 229 F.3d at 441-42; <u>Schultz</u>, 2007 WL 4276696 at *8.  However, the Supreme Court has never held that constitutionally protected intimate associations are restricted to relationships among family members.  <u>Bd. of Dir. of Rotary Int'l</u>, 481 U.S. at 545.

Intimate associations are characterized by attributes such as "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.  <u>Roberts</u>, 468 U.S. at 620.  Thus, the relevant factors in determining whether an intimate association exists include "size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent."  <u>Id.</u>; <u>Pi Lambda</u>, 229 F.3d at 442.  Indeed, dating may qualify as an associational activity protected by the First Amendment, <u>see</u> <u>Kicklighter v. Evans Cnty. Sch. Dist.</u>, 968 F. Supp. 712, (S.D. Ga. 1997) (citing <u>Wilson v. Taylor</u>, 733 F.2d 1539, 1544 (11th Cir. 1984)), though the degree of constitutional protection afforded to an association depends on the characteristics of the relationship.  <u>Roberts</u>, 468 U.S. at 620 ("Determining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments.").

13

At this juncture, the court finds that the complaint alleges sufficient facts to state a claim for violation of plaintiffs' First Amendment rights to intimate association.  See Freebery v. Coons, 589 F. Supp. 2d 409, 421 (D. Del. 2008) (citing Lyng v. Int'l Union, et al., 485 U.S. 360, 365 (1988).  Although policies restricting intimate associations do not necessarily violate the Constitution, see Flaskamp v. Dearborn Pub. Sch., 385 F.3d 935 (6th Cir. 2004) (a school board policy prohibiting sexual relationships between teachers and former students who had graduated within the past year or two did not violate plaintiff's right to intimate association), the instant complaint alleges that no such policy or restriction existed.  Accordingly, defendants' motion to dismiss this claim will be denied.

### 3.    Fourteenth Amendment Right to Intimate Relations

The due process clause of the Fourteenth Amendment has been construed to protect an individual's privacy interest including the right to marry, procreate, rear children, and become involved in consensual sexual relationships.  Lawrence v. Texas, 539 U.S. 558, 573-74 (2003).  Plaintiffs allege in Count II that Lebanon County and the defendants individually violated their substantive due process right to privacy in their intimate relations.

Plaintiffs allege they had an intimate and private relationship and that defendants interfered with that private relationship by ordering that plaintiffs not see each other, threatening imprisonment, and filing criminal charges to thwart their relationship.  The court's rationale for denying defendants' motion to dismiss the First Amendment intimate association rights, is equally applicable to the

Fourteenth Amendment claims.  Thus, the court finds that the complaint sufficiently states a claim for violations of the Fourteenth Amendment right to privacy.

4. **Lebanon County Liability**[6]

In the instant matter plaintiffs generally aver that "Lebanon County carried on an unlawful policy of imposing illegal special probation conditions against Adult Probation Department clients without Court orders and without hearings," (Doc. 1 ¶ 33) in violation of plaintiffs First and Fourteenth Amendment rights to associate, and that the policy was carried out intentionally by defendants Barry and Worley. (Id. ¶ 34).

A municipality, such as Lebanon County, may be liable under 42 U.S.C. § 1983 for the violation of an individual's federal statutory or constitutional rights when it implements an official policy or custom that results in a constitutional deprivation.  See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978) ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  A

_____

[6] Asserting a claim against a government employee in his official capacity is simply another way of asserting a claim against the governmental body itself. Mitros v. Borough of Glenolden, 170 F. Supp. 2d 504, 506 (E.D. Pa. 2001) (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)) ("Where a suit is brought against a public offic[ial] in his official capacity, the suit is treated as if [it] were brought against the governmental entity of which he is an offic[ial].").  Therefore, the court will consider official capacity and municipal liability together.

municipality cannot, however, be held liable solely for the acts of its employees on a *respondeat superior* theory. Id. at 691.

Liability under § 1983 must stem from policy making authority. Only an individual with final decisionmaking authority can make official policy on behalf of the municipality. See Pembauer v. City of Cincinnati, 475 U.S. 469, 483-84 (1986). "[I]n order to ascertain who is a policy maker a court must determine which official has final, unreviewable discretion to make a decision or take action." Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996). Whether a person has final decisionmaking authority is a question of state law. McGreevy v. Stroup, 413 F.3d 359, 368 (3d Cir. 2005); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

A single decision by an individual with policy making authority can be enough to impose liability on a municipality. See Pembaur, 475 U.S. at 480 (stating that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances"); McGreevy, 413 F.3d at 367-68. However, not every decision by an officer subjects a municipality to liability. "Municipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483. If an employee's action is subject to discretionary review, the employee is not a final policymaker under § 1983. Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003).

16

In the instant matter, plaintiffs allege no facts indicative of a policy or custom of imposing probation conditions without court orders. Plaintiffs allege only the March 7, 2008 confrontation in which Barry directed Jeffrey to refrain from contact with Erin. The complaint is devoid of allegations that any defendant attempted to enforce the alleged condition or that conditions were similarly imposed upon other probationers without the imprimatur of the court. Furthermore, plaintiffs do not allege that defendants Barry, Worley or Leahy are final policy makers for Lebanon County, nor do plaintiffs denote any final policymaker as the source.[7] The complaint does not delineate a sufficient factual basis for this <u>Monell</u> claim, however, the court will grant leave to amend.

### 5. <u>Individual Defendant Liability</u>

In order to hold defendants liable in their individual capacities, plaintiffs must show that each defendant individually participated in or approved of the alleged constitutional violation. <u>See</u> <u>C.N. v. Ridgewood Bd. of Educ.</u>, 430 F.3d 159, 173 (3d Cir. 2005) (discussing the § 1983 liability of a school board and individual defendants in context of alleged privacy and speech violations). The Supreme

---

[7] In plaintiffs' brief in opposition to the motion to dismiss, plaintiffs claim that "it is clearly reasonable to infer that the individual Defendants could only act in such a rouge course of conduct if it was authorized by the official policies and practices of the County." (Doc. 10 at 15). The court disagrees. Plaintiffs' complaint must contain factual allegations, not merely conclusory assertions, indicating a policy or custom, and must identify a final policymaker responsible for the alleged policy or custom. The complaint provides no more than a formulaic recitation of the elements of a cause of action for municipal liability, which the court must disregard. <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

Court has established a two-part inquiry for individual capacity liability: the court determines whether there has been a violation of a constitutional right, and the court determines whether that right is clearly established. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (stating that courts have discretion to determine the appropriate order in which to address the two prongs of the test); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).

In the instant matter, defendants argue that they are entitled to qualified immunity. An official is entitled to qualified immunity when "[his or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a reasonable official would have known his conduct was unlawful, qualified immunity is generally not available. Leveto v. Lapina, 258 F.3d 156, 162 (3d Cir. 2001). At the motion to dismiss stage, a claim may be dismissed on the grounds of qualified immunity when immunity is established on the face of the complaint. See Leveto, 258 F.3d at 161.

Defendants argue that the right to intimate association, whether in the First or Fourteenth Amendment, is not clearly established in this context. Specifically, defendants argue that the right to intimate association is not absolute and the placement of restrictions on the liberty of individuals convicted of violating criminal laws is constitutional. (Doc. 7 at 21). Defendants also assert that there was no constitutional violation—only an isolated comment during the March 7, 2008

18

encounter which plaintiffs recognized to be "empty and meaningless" (Doc. 7 at 6), underscored by the fact that plaintiffs continued their relationship unabated. (Id. at 24).

Defendants correctly observe that probationers liberties may be constitutionally restricted. See Griffin v. Wisconsin, 483 U.S. 868, 874 (1987); id. (probationers have "conditional liberty properly dependent on observance of special [probation] restrictions") (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). Indeed, the Supreme Court has held that, supervision "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." Id. at 875. It is also undisputed that Jeffrey was on probation and subject to certain restrictions at the time of the alleged constitutional violations. Nonetheless, the complaint states sufficient facts to state a prima facie case, and immunity is not established on the face of the complaint. Such a determination must await the development of a factual record.

### B. Fourth Amendment Malicious Prosecution Claim

In Count III, Erin alleges that defendants Barry and Leahy initiated her criminal charges without probable cause in violation of her Fourth Amendment rights.

To prevail on Fourth Amendment malicious prosecution claim in a § 1983 action, Erin must show: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding terminated in Erin's favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other

19

than bringing Erin to justice; and (5) Erin suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding. McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

An essential element of a malicious prosecution claim is that the criminal proceeding terminated in favor of the accused--in other words, indicating the innocence of the accused. Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009) (en banc) (citing Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002). A favorable termination is typically signified by: (1) a discharge by a magistrate at a preliminary hearing; (2) the refusal of a grand jury to indict; (3) the formal abandonment of the proceedings by the prosecutor; (4) the quashing of an indictment or information; (5) an acquittal; or (6) a final order in favor of the accused by a trial or appellate court. Kossler, 564 F.3d at 187 (citing Donahue, 280 F.3d at 383). A favorable termination requirement is necessary to "avoid[] parallel litigation over the issues of probable cause and guilt." Heck v. Humphrey, 512 U.S. 477, 484 (1994) (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p.24 (1991)) (internal quotations omitted). "[T]o permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil lawsuit." Id.

In the instant matter, Lebanon County prosecuted Erin on two counts. She was convicted on one count of tampering with public records, and acquitted on one count of obstructing the administration of law. When there is a split verdict, the

court must review the charges brought by the prosecution and determine whether they arose from the same underlying conduct.  Kossler, 564 F.3d 181.  In Kossler v. Crisanti, the Third Circuit sitting en banc held that a plaintiff could not maintain a malicious prosecution claim when he had been convicted of disorderly conduct but acquitted of aggravated assault and public intoxication.  Id.  The Third Circuit reasoned that because all three charges arose out of the same underlying conduct, the conviction on one charge was founded on the same factual situation as the other charges, therefore the judgment did not reflect the plaintiff's innocence.  Id. at 189.  As the court stated: "acquittal on the aggravated assault and public intoxication charges cannot be divorced from [plaintiff's] simultaneous conviction for disorderly conduct when all three charges arose from the same course of conduct," thus the criminal proceeding did not conclude in plaintiff's favor.  Id.

In the instant matter, the complaint is clearly deficient with respect to the malicious prosecution claim.  Erin does not allege, in even conclusory terms, that her criminal prosecution resulted in a favorable outcome, nor does she allege a seizure under the Fourth Amendment.  The claim will be dismissed, but the court will grant plaintiff leave to amend the complaint.  Any such amendments must address the Kossler v. Crisanti split verdict scenario as well as the remaining elements of a malicious prosecution claim.  See Iqbal, 129 S. Ct. at 1950.

## C.      Right to Petition for Redress of Grievances

The First Amendment protects the right of persons "to petition the Government for a redress of grievances."  U.S. CONST. AMEND. I.  In Count IV,

plaintiff Erin alleges that defendant Barry violated her First Amendment right to petition for a redress of grievances when Barry contacted Erin's supervisor at Fort Meade. Erin alleges that her decision to contest the criminal charges brought against her constituted a constitutionally protected petitioning activity.

Hence, the threshold question with regard to this claim is whether Erin's action of defending against criminal charges qualifies as petitioning within the meaning of the First Amendment. See Foraker v. Chaffinch, 501 F.3d 231, 235 (3d Cir. 2007). The court finds it does not.

The Petitions Clause of the First Amendment, unlike the free speech clause, refers to specific conduct in which an individual addresses the government and asks the government "to fix what, allegedly, government has broken or has failed in its duty to repair." San Filippo v. Bongiovanni, 30 F.3d 424, 442 (3d Cir. 1994). Such conduct literally involves petitioning the government, either through formal mechanisms, such as lawsuits, grievances and workers compensation claims, or informal mechanisms, such as letters to the government. Foraker, 501 F.3d at 236-37; see also id. at 235-35 (discussing the history of the Petitions Clause).

Defending against criminal charges does not qualify as petitioning the government for a redress of grievances. It involves none of the hallmarks of petitioning such as filing complaints, grievances or letters. The only possible activity that could be considered "petitioning" is the correspondence transmitted in early June of 2008, by counsel for plaintiffs, to defendant Barry, advising Barry that "she had been behaving illegally." (Doc. 1 ¶¶ 20-21). Assuming *arguendo* that this

letter qualifies as First Amendment petitioning activity, the alleged phone call occurred in April of 2008, and the correspondence was not mailed until June. Consequently, Barry's phone call to Erin's employer could not have been in retaliation for Erin's petitioning activities. Similarly, the phone call cannot, as a matter of law, have been made in retaliation for this complaint, which was filed March 8, 2010. Plaintiff has not stated a claim for violation of her First Amendment right to petition for redress of grievances. Amendment on this count would be futile and, therefore, leave to amend will not be permitted.

### D.   Punitive Damages

Plaintiffs request punitive damages in all counts against all defendants, save for Lebanon County. Defendants argue that plaintiffs have failed to plead facts to satisfy the high burden for punitive damages. (Doc. 7 at 29). Plaintiffs assert that it is premature to address the adequacy of a punitive damages request at the motion to dismiss stage.

The court first notes that plaintiffs are simply incorrect about the timing of consideration of punitive damages claims. Courts can and do address punitive damages claims at the motion to dismiss stage. See Smith v. Central Dauphin Sch. Dist., 419 F. Supp. 2d 639, 649 (M.D. Pa. 2005); Toplisek v. Canon McMillan Sch. Dist., Civ. A. No. 10-767, 2010 WL 4103645 at *5-6 (W.D. Pa. Oct. 18, 2010); Boring v. Google, Inc., 362 Fed. Appx. 273, 283 (3d Cir. 2010) (rejecting plaintiff's claim that punitive damages must always be determined by a jury after discovery, and finding that under the Iqbal pleading standard there was no foundation in the complaint

23

for a demand for punitive damages). Punitive damages are available against individual defendants in § 1983 actions only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Central Dauphin Sch. Dist., 419 F. Supp. 2d at 649 (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).

In the instant matter plaintiffs allege that the prosecution of Erin was "pursued to achieve the vindictive personal goals of Leahy and Barry," (Doc. 1 ¶ 48), and that defendant Barry contacted Erin's supervisors in "an act of blatant retaliation" and lied "in a hateful vindictive retaliatory effort" to injure plaintiff Erin. (Id. ¶¶ 51-52). Although threadbare, these allegations are minimally sufficient to identify evil motive or intent or reckless or callous indifference. The court will permit the development of a factual record on the matters relevant to a punitive damages claim.

## IV.    Conclusion

For the foregoing reasons, the court will grant in part, and deny in part the motion to dismiss. The motion to dismiss Counts I and II is granted with respect to Lebanon County. The motion is otherwise denied with respect to Counts I and II. Counts III and IV will be dismissed. The court will grant leave to amend the First and Fourteenth Amendment intimate association claims in Counts I and II with respect to Lebanon County, and the Fourth Amendment malicious prosecution claim in Count III.

24

An appropriate order follows.

                                              <u>S/ Christopher C. Conner</u>
                                              CHRISTOPHER C. CONNER
                                              United States District Judge

Dated:      November 23, 2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIN M. GARDNER**, and | : | **CIVIL ACTION NO. 1:10-CV-0527** |
| **JEFFREY M. GARDNER** | : | |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SALLY BARRY,** | : | |
| **RICHARD WORLEY, JOHN LEAHY,** | : | |
| and **LEBANON COUNTY** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 23rd day of November, 2010, upon consideration of

defendants' motion (Doc. 6) to dismiss, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  The motion (Doc. 7) to dismiss is GRANTED in part as follows:

    a.  Counts I and II are dismissed as to Lebanon County only with
        leave to amend;
    b.  Count III is dismissed with leave to amend;
    c.  Count IV is dismissed without leave to amend.

2.  The motion is DENIED in all other respects.

3.  Plaintiffs are GRANTED leave to file, within twenty (20) days of this
    order, an amended complaint with respect to the First and Fourteenth
    Amendment intimate association claims in Counts I and II against
    Lebanon County, and the Fourth Amendment malicious prosecution
    claim in Count III.  If no such amended pleading is filed, the instant
    matter will proceed on the remaining claims.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge
